Mr. Toure v. Barr, or Tour, maybe Toure. Mr. Conte. Good morning, ma'am. Please record. My name is Florent Conte. I represent Ms. Yaya Toure, the petitioner in this case. Your Honor, we respectfully submit to the court that the judge in this case, the immigration judge, did abuse her discretion in denying the motion to continue in this case. At the outset in this case, the counsel for the petitioner, for Mr. Toure, did concede that there was an oversight in not filing a motion prior to the hearing on August 16, 2017. That's really how this case strikes me. It seems to me, I realize that that was the statement. It sounds like it was you who said that. Yes, Your Honor. But the immigration judge really found that there had not only not really been reasonable diligence, I think the immigration judge felt that there had not been a good faith effort to comply with the request to keep the court updated when Mr. Toure stands there and says there's a good faith marriage and there's already been a separation. Now, sometimes separations don't turn into divorces. A lot of the time they do. And there's no immediate notification of the court that this is changing into a waiver petition when the divorce is final months after the hearing. This is an abuse of discretion standard as far as I'm concerned, and I cannot find it in me to find an abuse here. Well, Your Honor, in the first place, the court referenced the initial hearing in March of 2014. That was after a petition for dissolution of marriage had been filed. Right, and not a peep about that is uttered in the immigration judge's hearing. Well, Your Honor, at that point, I don't believe it was appropriate to discuss it. What do you mean it's not appropriate? The judges are entitled to see all of the circumstances of the case. That is true, Your Honor, but the documents that were submitted to the court at that time was to review the joint petition that was filed in 2011. So it was not an issue of a waiver at that point in time. Well, I know it wasn't. You weren't technically asking for a waiver because the final judgment in the divorce hadn't happened. Right. But as I said, a relevant fact about this petition is that this marriage is on the rocks. You know, there's already a formal separation. There's already been a finding, in fact, that it's not even a good faith marriage. And this is hardly something that undermines that finding. Well, Your Honor, I think that finding by USCIS is disputed, you know, the fact that they claim that it was not a good faith marriage. But it is a fact that that's what they found. Whether he wanted to dispute it, fine. That is correct, Your Honor, and that is why Mr. Turley was provided an opportunity for the immigration judge to review that decision, whether or not, in fact, the marriage was not a good faith marriage. But, Your Honor, the proceeding itself, this is not one of those cases where this court has seen, like, multiple continuances. That's not the case here. It's not. But look, you get three years. Right. And on top of that, if really what you want to focus on is the continuance, it seems to me the immigration judge was well within her authority to say that without the proper kind of contest of the sham marriage finding, this was an exercise in futility. There's no reason to grant a continuance if the result is foreordained. Well, Your Honor, in fact, the immigration, USCIS never found a sham marriage. This was something that was included in the notice to appear. It is not in the decision by the USCIS. They only talked about the burden of proof in the decision. So the sham marriage claim is something that appeared in the notice to appear. So, but on the day of the trial, the hearing itself, Your Honor, there are other factors that the immigration judge should have considered. But didn't USCIS on March 15, 2013, terminate his status as a permanent resident because of the marriage problem? Well, because they did not find that he met his burden of proof. They established that, in fact, the marriage result. Right, so I'm looking right at the immigration judge's finding. The immigration judge says, on March 15, 2013, USCIS terminated his status as a conditional LPR, legal permanent resident. As DHS alleges, the respondent entered into the qualifying marriage for the purpose of procuring admission for adjustment of status. And then the removal proceedings follow and all the rest of these things. The immigration judge was reading from the notice to appear, Your Honor. Those are just allegations. But the facts of that case, and in fact, I cited in the brief that we submitted over in nine pages of documentation to establish that the marriage itself was bona fide. But, Your Honor, in terms of the continuance itself, on that day, on August 16, the government was not ready to proceed with the case. They did not even have the file for the petition. I know. So I think those are factors that should have been considered in denying this motion to continue. There was an agreement between, and this was not contested. That's not binding on the judge. I understand, Your Honor, but at least the judge should have at least looked at the Hashimi factors before even deciding to deny the motion to continue. The judge did not. We had to call the judge's attention to the fact that she needed to consult with the government's attorney to see if they were opposed to the motion to continue the hearing. She did not do that at the beginning. So if the government, if we had come there prepared to hear the case, the government did not have the file. I don't believe that the motion to continue would not have been granted if the government had asked for it. So I think our point is that the decision itself was not even handed. This is the only time a petitioner in this case asked for a motion to continue. Mr. Conte, as I understand it, Mr. Toure's only theory for wanting to remain in the United States lawfully at this point is that his marriage back in 2009 was, in fact, a good faith marriage. Is that right? That is correct, Your Honor. And he's therefore seeking a waiver of the consequences that that marriage dissolved. That is correct, Judge. Did he and Ms. Wolfe ever share a residence in Indianapolis? Yes, Your Honor. In fact, this case was previously approved by USCIS when he was awarded the condition of permanent residence. There was an interview. They went and submitted documents of their bona fide connection. Right, and then there was a further investigation and it all blew up, right? That's a notice of intent to deny. Right. That's when they filed to remove the condition. And is it correct that between 2014 and the summer of 2017, Mr. Toure made no effort to procure a waiver of the marriage requirement?  That is correct, Your Honor. So it looks like what we've got here is silence in front of the immigration judge and, in effect, a three-year continuance from 2014 to 2017. Nothing happens, and now he still wants to litigate the validity of this marriage back in 2009. Well, Your Honor, I have some information also to reveal to the court before I take up that argument. I want to advise the court that Mr. Toure was, in fact, scheduled for an interview before USCIS on April 18th, this year, on the waiver petition. But I was informed by his family and friends that he was worried that he would be detained by immigration, by ICE officers, and he has fled to Canada. So he's, in fact, no longer in the United States. But we will submit, Your Honor, that the failure to file the motion to continue was an oversight. We admit to that. It's not like the case that the government relied on, the Ojiri case, where there were, in fact, a year before the hearing, a few months before the hearing, there was a notice from the court. We kind of jolted the, we were supposed to jolt the petitioner to take action on the case. This was, the time frame between the first hearing and the last hearing was really inordinate. It was pretty long, you know, and sometimes, you know, there is potential for an oversight. The immigration judge should have considered other factors, even though, yes, a motion to continue was not filed prior to that hearing in August of 2016. So I believe that the court, based on the arguments that were made in our brief, and if the court looks at the factors, other relevant factors, that it was right for this judge not to. Okay. Not to. Thank you very much. Okay, Your Honor. Mr. Leo. Yes, good morning, Your Honors. Attorney Sabatino F. Leo on behalf of the United States Attorney General. The immigration judge, I think as Judge Wood mentioned, acted within her discretion with denying this motion for continuance. Counsel, we have a situation. I just want to back up for a moment with regard to the inquiry before this court and opposing counsel relying on and indicating that it was the notice to appear that rendered that these aren't the facts of the case, but that it was simply the notice to appear were just allegations. I would invite this court's attention to the administrative record, page 156, which is a July 18, 2013 decision of SIS, which says, your marriage was a sham entered into for purposes of procuring permanent resident status. I would also invite this court's attention to the prior page, page 154 of the administrative record. You have not established that you are building a life together. You have not established that you are building a shared life together. You are engaged in a situation which conducted by two federal officers are not building a shared life together. I think it's pretty clear from the factual record of March 15, 2013 and July 2013 that SIS actually did make those factual findings. There's no appeal, aside from this one, from those findings, I take it? No. He's notified for those findings? He's notified on July 18, 2013 of the notice to appear that his conditions on his lawful permanent residence were now strict. As a result, according to this Code of Federal Regulations and the statute INA 216, Code of Federal Regulations 8 CFR 1216.4 and .5 for purposes of the waiver, that he has the right in removal proceedings to have that determination reviewed. What we know by the facts of the situation here is that the NTA was issued. This individual, the petitioner, did appear before immigration court. In immigration court on March 15, 2014, indicated that we are still moving forward on this joint petition, the I-751. What is also clear from the record at that particular point in time is not only were they in divorce proceedings being represented by this particular petitioner, but that it's also clear that there was no indication that petitioner even knew where his wife was or alleged wife was at that particular time. Because if you notice in the dissolution of marriage that was issued in December of 2014, that notification was issued by summons. By publication. By publication. And on the record before the court, Mr. Torre concedes that fact. So it behooves us to think the genuineness behind the arguments with regard to potential reconciliation. We're not more than approximately six months after you're making representations in immigration court. But did they tell, I thought he didn't even tell the immigration court in the March hearing that the formal separation had happened. He did not. He made no mention of it. So the judge has no idea that anything is happening. No idea. For all intents and purposes, the judge at that particular time was aware that there was this joint petition that had been denied but now was subject to review in removal proceedings. And that petitioner was moving forward on this particular joint petition for review. In fact, what I think we need to, what is good on the part, now we have concerns with immigration judges in the past. And they do make some errors in the board of the agency. And I admit that is what I would point to is the immigration judge even has a colloquy with counsel on the record that says, okay, let us know if something were to change with regard to this filing. You'll have to file something with USCIS. So she doesn't specify anything changing with the marriage. But doesn't she indicate if there are any grounds for a waiver? I thought she mentioned possible waiver in there. I think what she said, my understanding is she says here exactly is on page 67 of the administrative record. So this is the judge to Mr. Conte. And the wife still wants to do a joint filing. So far, yes, Your Honor, it's his response. Judge, okay, if something changes for a waiver, you know, you have to file it. And that's on page 67 of the administrative record. So at that particular time, counsel was fully aware that there was a separation. Fully aware, if I may, that there's a situation where it may even not even potentially locate the spouse. You have factual findings on this particular record that indicate that this marriage was a sham and not entered to for the purposes of good faith purposes. And then nothing is said. Again, and then also, what happens is the I-751 waiver, even though the divorce is finalized on December of 2014, there's nothing filed with USCIS until July of 2017. 2017, right, right before. On the eve, literally on the eve of the immigration hearing. So I would add to this court, so the counsel could come in and petitioner could come in and say, oh, whoa, whoa, we have something filed with I-751, give us a waiver. When in fact, and I think Your Honor, Judge Hamilton pointed it out quite clearly, is that there was a de facto continuance. You had three years to figure this stuff out, to work, to understand these facts. You were aware of the dissolution. This is not a situation where another counsel comes in not aware of the facts behind and what's going on. And not only that, and that the evidence that is presented today, that for purposes of the I-751 waiver, the individual is supposed to appear for an interview. The individual does not appear, but instead flees to Canada. So I think in all, in sum and substance of this particular case, is that we have a situation in which the immigration judge understood what was going on, acted within her discretion not to grant a continuance in this particular case. Can I ask you whether, I mean, this is new to me, flight to Canada and everything, whether in your view that has any effect on the case presently before us? Well, I mean, whether or not he can, he's now fled as subject to a final order of removal, which was issued by the Board of Immigration Appeals. There is an issue with regard to the Fugitive Disentitlement Doctrine, whether or not an individual subject to a removal order pending before a court then absconds or takes off. As a result of that, I'm not an expert on the Fugitive Disentitlement Doctrine. I don't know enough about it. It's usually used in criminal cases. Yes, it's usually used in a situation when an individual absconds. So I just wonder if he's somehow away. I don't know. That's why I asked the question. But if you don't know the answer, that's fine. You want him out of the country anyway. Yes, Your Honor. He's Canada's problem at the moment. He decides to come back in. Yes. No, of course. And we want him. But whether we have a live issue before us is what is floating across my mind. Am I missing something? I thought that one of the changes in the 1996 legislation was a provision that the fact that the alien left the country after a removal order does not prevent further review in the Court of Appeals. The doctrine before 1996 was that it did. Yes. That has changed by statute to provide that it doesn't. I concur, Your Honor, 100 percent with regard to the 1996 statute says that. My only concern is I don't want to answer the question 100 percent is with regard to his being subject to an interview, not going to that interview, absconding as a result, and whether or not that has any interplay with regard to his ability to continue on whatever he may have as far as a live claim or application for relief. Certainly, if the government had removed him, sent him back to Mali, and he wanted to continue pursuing this case, that change means he would have had every right to do that. Yes, Your Honor. I've seen plenty of cases like that. I concur and deal with it quite often with that regard. My only concern is that when the evidence was presented today that he was subject to an interview, failed to appear for that interview, and subsequently absconded, whether or not that little nuance could be. I'm just not an expert on that nuance. Do you recall whether this court issued a stay in this case, a stay of removal? I don't believe a stay was issued in this case, Your Honor. I didn't come on until the briefing stage of this matter, but I don't believe a stay was issued. It hadn't occurred to me to check. Exactly. Okay. And so in sum, unless it's subject to this court's questions, we would ask that the petition for review be denied and that the immigration judge not abuse her discretion. Thank you very much, Your Honors. Thank you, Mr. Leo. Mr. Conte, you have about 45 seconds. All right. With regards to his fleet to Canada, we did send a letter to USCIS indicating that he'd come to Canada. If there was a change in this decision, Your Honor, we believe he should be able to come back and attend his interview. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.